UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

4 K & D CORPORATION d/b/a GRAND ESTATES
AUCTION COMPANY, JOHN BLOESER, NANCY
BLOESER, DEBORAH JAROL, and SHERWIN JAROL,

                      Plaintiffs,

      -against-

CONCIERGE AUCTIONS, LLC, LAURA BRADY,
GEORGE GRAHAM, MICHAEL RUSSO, CA
PARTNERS, LLC, SEGUE LLC, BRADY HOGAN
INVESTMENTS, LLC and JANE DOE 1 10, and ABC
CORP. 1-10, The names "John Doe," "Jane Doe" and
"ABC Corp." being fictitious and unknown to Plaintiffs,

                      Defendants.

Docket No. 13CV2527 (JGK)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

MOSES & SINGER LLP
*Attorneys for Defendants*

Robert S. Wolf
Robert D. Lillienstein
Jordan Greenberger
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 554-7800
Fax: (917) 206-4307
rwolf@mosessinger.com
rlillienstein@mosessinger.com
jgreenberger@mosessinger.com

# Table of Contents

Page

TABLE OF AUTHORITIES ........................................................................................... i

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 4

ARGUMENT ................................................................................................................. 4

I.    THE STANDARD UNDER FED .......................................................................... 4

II.   THE AC DOES NOT CONTAIN THE SPECIFICITY REQUIRED BY FED ............... 5

      A.    The AC Does Not Adequately Specify What Each Defendant Allegedly
            Did To Violate RICO ................................................................................ 7

III.  THE ALLEGATIONS OF BANK FRAUD FAIL TO STATE A CLAIM ................... 11

IV.   ALL RICO CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD
      BE DISMISSED ................................................................................................ 11

V.    THE §1962(A) AND §1962(B) CLAIMS SHOULD BE DISMISSED ....................... 13

VI.   GE'S §1962(C) CLAIM SHOULD BE DISMISSED BECAUSE ITS ALLEGED
      INJURIES WERE NOT PROXIMATELY CAUSED BY THE ALLEGED RICO
      VIOLATIONS ................................................................................................... 15

VII.  THE BLOESERS' AND JAROLS' RICO  CLAIMS SHOULD BE DISMISSED ....... 18

VIII. THE SECTION 1962(D) CLAIM SHOULD BE DISMISSED ................................. 20

IX.   THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED .................. 21

      A.    The Tortious Interference With Contract Claim Should Be Dismissed ............. 21

      B.    The Tortious Interference With Business Relations Claim Should Be
            Dismissed ............................................................................................... 22

X.    THE AC FAILS TO STATE A CLAIM UNDER GBL §349 OR §350 ...................... 24

XI.   THE ACTION SHOULD BE DISMISSED ENTIRELY AGAINST CA, SEGUE
      AND BHI FOR LACK OF JURISDICTION, OR ALTERNATIVELY, FOR
      FAILURE TO STATE A CLAIM .......................................................................... 27

CONCLUSION ........................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL AND STATE CASES

*Ahead Realty LLC v. India House*,
  92 A.D.3d 424, 938 N.Y.S.2d 17 (1st Dep't 2012)............................................................ 24

*Allstate Insurance Co. v. Seigel*,
  312 F. Supp. 2d 260 (D. Conn.2004).............................................................................. 13

*Andre Strishak & Assoc. v. Hewlett Packard Co.*,
  300 A.D.2d 608, 752 N.Y.S. 2d 400 (2d Dep't 2002)...................................................... 25

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)........................................................................................15, 16, 17

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009).......................................................................................... 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................... 4, 5

*Assoc. Gen. Contractors v. California State Counsel of Carpenters*,
  459 U.S. 519 (1983)..................................................................................................... 16

*ATSI Comm., Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)............................................................................................ 18

*Atl. Intern. Movers, LLC v. Ocean World Lines, Inc.*,
  2012 WL 6200449 (E.D.N.Y. Dec. 11, 2012) .................................................................. 14

*BDCM Fund Adviser, LLC v. Zenni*,
  103 A.D.3d 475, 962 N.Y.S.2d 11 (1st Dept 2013) ........................................................ 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................... 4, 5

*Ben Hur Moving & Storage, Inc. v. The Better Business Bureau of Metro. New York, Inc.*,
  2008 WL 4702458 (S.D.N.Y. Oct. 3, 2008) (Koeltl, J.)....................................6, 7, 11, 19

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)..................................................................................................... 18

*Carvel v. Franchise Stores Realty Corp.*,
  2009 WL 4333652 (S.D.N.Y. 2009) (Koeltl, J.) .............................................................. 12

*Catskill Dev., LLC v. Park Place Entertainment Corp.*,
   547 F.3d 115 (2d Cir. 2008)...................................................................... 23

*Cedric Kushner Promotions Ltd. v. King*,
   533 U.S. 158 (2001)............................................................................. 11

*City of N.Y. v. Smokes-Spirits.com, Inc.*,
   12 N.Y.3d 616, 883 N.Y.S.2d 772 (N.Y. 2009)........................................25, 26, 27

*Cosmas v. Hasset*,
   886 F.2d 8 (2d Cir. 1989)......................................................................... 6

*Cruz v. FXDirectDealer, LLC*,
   2013 WL 3021904 (2d Cir. June 19, 2003) ........................................3, 12, 26, 29

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000)....................................................................... 29

*DeBlasio v. Merrill Lynch & Co., Inc.*,
   2009 WL 2242605 (S.D.N.Y. July 27, 2009) ................................................ 6, 8

*Discon v. NYNEX Corp.*,
   93 F.3d 1055 (2d Cir. 1996), *vacated on other ground*, 525 U.S. 128 (1998)...................... 15

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987) .................................................................. 7, 9

*DM Research, Inc. v. College of Am. Pathologists*,
   170 F.3d 53 (1st Cir. 1999)....................................................................... 7

*Donelli v. County of Sullivan*,
   2009 WL 2365551 (S.D.N.Y. July 31, 2009) (Koeltl, J.).......................................... 5

*Ellison v. Am. Image Motor Co.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999) *aff'd*, 2 Fed. Appx. 109 (2d Cir. 2001)........................ 8

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)....................................................................... 5

*First Capital Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004).................................................................21, 29

*Fischbein v. Sayers*,
   2009 WL 2170349 (S.D.N.Y. July 16, 2009) .................................................. 21

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
   957 F. Supp. 477 (S.D.N.Y. 1997) .............................................................. 24

*GICC Capital Corp. v. Technology Fin. Group*,
67 F.3d 463 (2d Cir.1995) ............................................................................................... 19

*Globe Wholesale Tobacco Distributors Inc. v. Worldwide Wholesale Trading Inc.*,
2007 WL 2826630 (S.D.N.Y. Sep 28, 2007) ....................................................................... 17

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
98 N.Y.2d 314, 746 N.Y.S.2d 858 (N.Y. 2002) ............................................................25, 26

*Gristede's Foods, Inc. v. Unkechauge Nation*,
532 F. Supp. 2d 439 (E.D.N.Y. 2007) .......................................................................13, 15

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
50 N.Y.2d 183, 428 N.Y.S. 2d 628 (N.Y. 1980) .............................................................. 28

*Harper v. City of New York*,
2010 WL 4788016 (E.D.N.Y. Nov. 17, 2010) *aff'd*, 424 Fed. Appx. 36 (2d Cir. 2011) ........ 28

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) .................................................................................................. 5

*Hayden v. Paterson*,
594 F.3d 150 (2d Cir. 2010) ................................................................................................ 5

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2d Cir.1990) ................................................................................................. 20

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) .............................................................................................................. 15

*Holmes v. Sec. Investor Prot. Corp.*,
503 U.S. 258 (1992) ......................................................................................................15, 16

*In re Crude Oil Commodity Litig.*,
2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................................................23, 24

*In re Refco Inc. Securities Litigation*,
826 F. Supp. 2d 478 (S.D.N.Y. 2011) ...........................................................................23, 24

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) ...................17, 23, 24

*Kaufman v. Sirius XM Radio, Inc.*,
474 Fed. Appx. 5 (2d Cir. 2012) ........................................................................................ 26

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006) ............................................................................................... 21

*Kolari v. N.Y. Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)........................................................................23, 24

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999).............................................................................. 27

*Lawrence v. Union of Orthodox Jewish Congregations of Am.*,
    32 A.D.3d 304, 820 N.Y.S.2d 60 (1st Dep't 2006)............................................. 24

*Lawson v. Full Tilt Poker Ltd.*,
    2013 WL 950871 (S.D.N.Y. Mar. 7, 2013) ........................................................ 15

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2005) ...........................................................25, 27

*Leviton Mfg. Co., Inc. v. Reeve*,
    2013 WL 504020 (E.D.N.Y. Feb. 7, 2013), amended (Mar. 23, 2013)................. 8

*Loubier v. Allstate Ins. Co.*,
    2010 WL 1279082 (D. Conn. Mar. 30, 2010) ...................................................... 8

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986)................................................................................... 8

*Lugosch v. Congel*,
    443 F. Supp. 2d 254 (N.D.N.Y. 2006)............................................................... 14

*Lundy v. Catholic Health Sys. Of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013)................................................................................. 5

*Makowski v. United Broth. of Carpenters & Joiners of Am.*,
    2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010) ..................................................... 17

*Marks v. Smith*,
    65 A.D.3d 911, 885 N.Y.S.2d 463 (1st Dept 2009) ......................................... 22

*McDonald v. Schencker*,
    18 F.3d 491 (7th Cir. 1994)................................................................................ 18

*Medisim Ltd. v. BestMed LLC*,
    212 WL 5954757 (S.D.N.Y. Nov. 28, 2012) ..................................................... 26

*Moore v. PaineWebber, Inc.*,
    189 F.3d 165 (2d Cir. 1999)................................................................................. 5

*Murataj v. Dream Dragon Prods., Inc.*,
    72 A.D.3d 527, 898 N.Y.S.2d 453 (1st Dept 2010) ......................................... 22

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*,
   87 N.Y.2d 614, 641 N.Y.S.2d 581 (N.Y. 1996)..................................................... 24

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
   85 F. Supp. 2d 282 (S.D.N.Y.2000) ................................................................... 8

*OSRecovery, Inc. v. One Groupe Int'l., Inc.*,
   354 F. Supp.2 d 357 (S.D.N.Y.2005) ...................................................13, 14, 15

*Ouaknine v. MacFarlane*,
   897 F.2d 75 (2d Cir. 1990)................................................................................ 13

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   2003 WL 22052778 (S.D.N.Y. Sep. 3, 2003), *vacated in part on other grounds*, 396
   F.3d 508 (2d Cir. 2005)..................................................................................... 25

*People ex rel. Spitzer v. Direct Revenue LLC*,
   19 Misc. 3d 1124(A), 826 N.Y.S.2d 816 (Sup. Ct., N.Y. Co. Mar. 12, 2008) ..................... 26

*Plasticware, LLC v. Flint Hills Res., LP*,
   852 F. Supp. 2d 398 (S.D.N.Y. 2012) ...................................................21, 22, 23

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)............................................................................... 18

*Sassi v. Breier*,
   76 F.R.D. 487 (D. Wis. 1977), *aff'd* 584 F.2d 234 (7th Cir. 1978)...................... 27

*Schneider v. Pearson Educ., Inc.*,
   2013 WL 1386968 (S.D.N.Y. April 5, 2013)........................................................ 9

*Spin Master Ltd. v. Bureau Veritas Consumer Products Servs., Inc.*,
   2011 WL 1549456 (W.D.N.Y. Mar. 7, 2011), report and recommendations adopted,
   2011 WL 1542038 (W.D.N.Y. Apr. 22, 2011) .................................................... 27

*Stolow v. Greg Manning Auctions, Inc.*,
   258 F. Supp. 2d 236 (S.D.N.Y. 2003) ................................................................ 13

*U1IT4less, Inc. v. FedEx Corp.*,
   896 F. Supp. 2d 275 (S.D.N.Y. Sep 25, 2012) ................................................... 20

*Vaden v. Connecticut*,
   557 F. Supp. 2d 279 (D. Conn. 2008)................................................................ 27

*Valenti v. Penn Mutual Life Ins. Co.*,
   850 F. Supp. 2d 445 (S.D.N.Y. 2012) (Koeltl, J.)............................................. 20

*U.S. v. Barrett*,
    178 F.3d 643 (2d Cir. 1999) ............................................................... 11

*U.S. v. Nkansah*,
    699 F.3d 743 (2d Cir. 2012) ............................................................... 11

*Webb v. Goord*,
    340 F.3d 105 (2d Cir. 2003) ............................................................... 20

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
    8 N.Y.3d 422, 835 N.Y.S.2d 530 (2007) .................................... 21, 22

*Zimmerman v Poly Prep Country Day School*,
    888 F. Supp. 2d 317 (E.D.N.Y. 2012) ............................................... 19

### STATUTES AND RULES

18 U.S.C. § 1344 ............................................................................... 11

18 U.S.C. § 1961 ........................................................................... 8, 19

18 U.S.C. § 1962 ........................................................................ passim

18 U.S.C. § 1964 ...................................................................... 11, 15

28 U.S.C. § 1367 ................................................................................. 3

Fed. R. Civ. P. 4 ............................................................................... 28

Fed. R. Civ. P. 8(a) ..................................................................... 1, 3, 5

Fed. R. Civ. 9(b) ......................................................................... passim

Fed. R. Civ. P. 12(b) ................................................................... passim

Fed. R. Evid. 201 ............................................................................. 18

New York General Business Law ("GBL") § 349 .................. 4, 24, 25, 26

New York GBL § 350 ....................................................... 4, 24, 25, 26

### DOCKETED CASES & OTHER

*Oremus v. 4K&D Corp.*,
    No. 2010 CP 0203055, Court of Common Pleas, Aiken Count, Second Judicial
    Circuit, South Carolina ...................................................................... 18

22A N.Y. Jur. 2d Contracts § 503 ...................................................... 22

**Preliminary Statement**

Defendants Concierge Auctions, LLC ("Concierge"), Laura Brady ("Brady"), George

Graham ("Graham"), Michael Russo ("Russo"), CA Partners, LLC ("CA"), Segue LLC ("Segue"),

and Brady Hogan Investments, LLC ("BHI") (collectively, "Defendants"), by their attorneys Moses

& Singer LLP, respectfully submit this memorandum of law in support of their motion for an Order,

pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(2), 12(b)(4), 12(b)(5) and 12(b)(6), dismissing the

Amended Complaint (the "AC"), dated June 14, 2013, of plaintiffs 4 K & D Corporation d/b/a

Grand Estates Auction Company ("GE"), John Bloeser, Nancy Bloeser, Deborah Jarol and Sherwin

Jarol (collectively, "Plaintiffs").  A copy of the Amended Complaint is annexed as Exhibit A to the

Declaration of Robert Wolf, dated July 8, 2013.

Despite the liberal use of inflammatory and largely conclusory rhetoric about fraud and

racketeering, the allegations of the AC most certainly do <u>not</u> amount to a RICO case.  GE is a

disgruntled competitor that is grasping at straws to tarnish its more successful competitor –

Concierge – and to retaliate against Concierge for bringing a defamation action against GE that is

pending in Florida State court.  By merely filing a complaint alleging claims of "racketeering"

against Concierge, GE has probably achieved what it really set out to do:  tarnish Concierge's

reputation in the marketplace for real estate auctions, where competition is fierce, and where GE has

largely been unsuccessful.  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y.

1996) (internal quotation omitted) (the "mere assertion of a RICO claim ... has an almost inevitable

stigmatizing effect on those named as defendants"), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).  In reality,

the claims asserted in the AC amount to nothing more than garden variety business torts dressed up

as RICO violations.  Only here, the AC not only fails to allege valid RICO claims, it also fails to

allege valid claims for false advertising, tortious interference, or deceptive business practices by Concierge or any of the other defendants.[1]

The RICO claims asserted by GE fail for a number of reasons. The claim under 18 U.S.C. §1962(c) fails primarily because the AC does not allege that any injuries to GE's business were proximately caused by the alleged predicate acts of wire fraud or bank fraud. The alleged misrepresentations made by wire were allegedly made to third party real property owners, not to GE, and GE does not allege that it was directly harmed by them. The harm to GE, if any, came about as a result of the decision by property owners to hire Concierge to handle their auction. There are any number of reasons why an individual property owner would decide to hire one company over another. In most cases, the AC does not contain any allegation that the real estate owners even knew about GE, much less that they would have retained GE "but for" the alleged misrepresentations.

All RICO claims should also be dismissed because the allegations of wire fraud and bank fraud lack the specificity required by Rule 9(b). In nearly every instance, the AC does not plead dates, times, locations, recipients, or specific statements or transactions. The AC also fails to differentiate between the actions of the various defendants, often relying on allegations of wrongdoing attributed to the "Defendants" generally, lumped together, or to "Concierge," even though Concierge is not named as a defendant in the section 1962(c) claim. These allegations fail to satisfy Rule 9(b)'s requirement that a complaint must set forth separately the specific acts or omissions of *each defendant*.

The section 1962(a) claim should be dismissed for the additional reason that the AC does not allege an "investment injury" – i.e. that Plaintiffs were injured from the defendants' investment

---

[1]    In an effort to mask the true nature of this case, Grand Estates has recruited the Bloesers and Jarols – people who had previously contracted with Concierge – to serve as nominal plaintiffs.

of racketeering income – that is separate and apart from any injury caused by the predicate acts themselves. Similarly, the AC does not allege an "acquisition or maintenance injury" under 18 U.S.C. §1962 (b) – i.e. that Plaintiffs were injured as a result of their acquisition or maintenance of control over an enterprise. Rather, the AC makes clear that Plaintiffs' injuries, if any, were caused by the predicate acts themselves, which is actionable only under section 1962(c).

The RICO claims asserted against Brady, Russo and Graham under 18 U.S.C. §1962(a)–(c) are also deficient because they fail to distinguish between the RICO "persons" and the RICO "enterprise." Here, Concierge is alleged to be the RICO enterprise and the individual defendants – Brady, Russo and Graham (the "Individual Defendants") – are alleged to be the RICO persons. Yet, the AC alleges that the actions of the Individual Defendants were all taken as officers and directors of Concierge. Less than one month ago, the Second Circuit dismissed similar claims against corporate officers for failing to differentiate between the RICO persons and the enterprise. *Cruz v. FXDirectDealer, LLC*, No. 12-1252-cv, 2013 WL 3021904 (2d Cir. June 19, 2013).

The RICO "conspiracy" claim under 18 U.S.C. §1962(d) should be dismissed because the AC alleges conspiracy in only the most conclusory terms, in violation of Fed. R. Civ. P. 8(a). No facts are alleged to show that each defendant knew about and consciously agreed to facilitate a pattern of racketeering activity. The RICO conspiracy claim should also be dismissed because the substantive RICO counts fail to state a claim upon which relief may be granted.

Once the RICO claims are dismissed, the Court should decline to exercise jurisdiction over the three remaining state law claims. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)) ("a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction'"). In any event, those claims fail to allege valid claims against any defendant. To the extent that the AC purports to allege tortious interference with contract, that claim fails because it does not allege

that Concierge was aware of or did anything to interfere with the one GE contract that GE claims it lost, nor does it even allege that that one contract was breached. The tortious interference with business relations claim fails to allege that GE had a legitimate likelihood of doing business with any of the persons it identifies as potential clients. Additionally, GE fails to allege that Concierge was aware of GE's alleged potential business relationships, or that Concierge did anything wrongful to interfere with those relationships. Persuading potential clients to contract with Concierge is not tortious interference.

Plaintiffs' claims under New York General Business Law ("GBL") §§349 and 350 are deficient for a number of reasons, including the fact that GE does not claim to have been deceived anywhere, and that any deception of the Jarols took place in Illinois, which is beyond the reach of the New York statutes. GE's claims are also deficient because its claimed injuries were not proximately caused by the alleged deceptive conduct. Its injuries, if any, are indirect and derivative, and thus, not actionable. Finally, Plaintiffs' claims of false advertising under GBL §350 fail because they do not claim that they relied on any specific piece of allegedly deceptive advertising. Indeed, GE alleges that it was not deceived at all.

**Statement of Facts**

For purposes of this motion only, the well pleaded facts in the Amended Complaint are presumed to be true. The allegations pertinent to this motion will be repeated where necessary.

**Argument**

**I.     The Standard Under Fed. R. Civ. P. 12(b)(6) And 8(a)**

To survive a Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss, the complaint must plead "'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In *Iqbal*, 556 U.S. at 679, the Supreme Court set forth a "two-pronged approach" to evaluate the sufficiency of a

complaint under Fed. R. Civ. P. 8(a). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and alterations omitted). Thus, a court considering a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After identifying such pleadings, the Court next "should determine whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted). "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible only when "the plaintiff pleads <u>factual content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). When a pleading makes allegations that are equally consistent with lawful conduct and unlawful conduct it "stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (quoting *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55-56 (1st Cir. 1999)).

## II.     The AC Does Not Contain The Specificity Required By Fed. R. Civ. P. 9(b)

Because the RICO claims in the AC are based on predicate acts of wire fraud and bank fraud, they are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). *Donelli v. County of Sullivan*, 2009 WL 2365551, at *2 (S.D.N.Y. July 31, 2009) (Koeltl, J.) (citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999); *Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013)). Rule 9(b)

provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Rule 9(b) therefore requires that a RICO complaint based on predicate acts involving fraud "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made and identify those responsible for the statements." *Ben Hur Moving & Storage, Inc. v. The Better Bus. Bureau of Metro. N.Y., Inc.*, No. 08 Civ. 6572, 2008 WL 4702458, at *1 (S.D.N.Y. Oct. 3, 2008) (Koeltl, J.) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)). "'Allegations that are conclusory or unsupported by factual assertions are insufficient.'" *DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 WL 2242605, at *10 (S.D.N.Y. July 27, 2009) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98-99 (2d Cir. 2007)).

The AC is virtually silent as to the specifics of any wire transactions.  In most cases, the Plaintiffs do not plead dates, times, locations, recipients, or specific statements.  Instead, Plaintiffs merely allege broad and conclusory statements like the following:

- "Concierge uses nominees, plants, and limited liability companies owned and controlled by Defendants or acting in collusion with Defendants herein, to make it appear that there are many more bona fide bidders at an auction than the actual amount, or to otherwise make it appear that an auction was successful when in fact it was not.  Each use of such a shill bidder constitutes an act of wire fraud by Concierge and the individual defendants."  AC, ¶¶99-100;

- "…the facts surrounding Concierge's multiple acts of fraudulent conduct and false advertising with respect to the Bloesers contained multiple acts of wire fraud. . . . The Bloesers were directly injured as a result of Defendants' multiple acts of wire fraud."  AC, ¶148, 150;

- "Concierge's actions in their theft of the Break Up Fee constitutes bank fraud and wire fraud."  AC, ¶205[2];

- "As described in the paragraphs above, Defendants' actions with respect to 2195 Cresta included multiple acts of mail fraud and wire fraud."  AC, ¶243[3];

---

[2]    The AC's other allegations concerning the Break Up Fee do not even mention a communication by wire. *See* AC, ¶203-204.

[3]    The "paragraphs above" do not identify the person to whom allegedly false representations were made by name, and do not state why the representations were false.  Nor do they do attribute those representations to any of

- "The knowing misrepresentations through marketing materials were made by Concierge though the mail, email, and internet, constituting wire fraud." AC, ¶268;

- "Each of the Enterprise Controllers has participated in the multiple acts of wire fraud and mail fraud as specified in the paragraphs above." AC, ¶370;

- "On multiple occasions, Concierge has accepted a bid from an undisclosed person on a telephone in the midst of an auction when that person was not previously registered. . . . Each use of such a shill bidder constitutes an act of mail fraud and/or wire fraud by Concierge and the individual defendants." AC, ¶¶95-97, 100;

- "Concierge has fraudulently induced sellers of luxury real estate to choose Concierge by intentionally misrepresenting its experience in luxury auctions, misrepresenting its sales statistics, by publishing false auction results, by using web crawlers to inflate web traffic results, by manipulating auction results to bolster its track record, by violating auction rules and auction law in several jurisdictions by, inter alia, using shill bidders, by allowing bids from unregistered bidders, by making false statements to allow auctions to go forward when, in the absence of those false statements, the auction would have been cancelled, as well as a plethora of other unfair practices." AC, ¶82;

- "As part of Concierge's sales pitch, Concierge provided false statistics to the Bloesers regarding Concierge's past sales and its history. The Bloesers also reviewed Concierge's online marketing, much of which contained false information as to Concierge's prior success." AC, ¶¶155-156;

- "As a matter of practice, Concierge has announced properties through press releases and other online social media tools as 'sold' at an auction regardless of whether the title will ever transfer.  On multiple occasions, Concierge announced properties as sold when it had reason to know that such sale would never close.  On multiple occasions, Concierge advertised a property as sold after it was aware that the contract of sale failed to close." AC, ¶¶84-86;

- "Roffers and Russo made repeated representations to the Bloesers consisting of false statements as to Concierge's success rate and experience. Such false statements were made orally, through the use of email, on Concierge's website, and in other marketing information which Concierge has caused to be available through the internet." AC, ¶126.

None of the foregoing allegations contain sufficient particularity necessary to satisfy the

requirements of Rule 9(b).  *Ben Hur*, 2008 WL 4702458, at *4-5.

### A.    The AC Does Not Adequately Specify What Each Defendant Allegedly Did To Violate RICO

"Where multiple defendants are asked to respond to allegations of fraud, the complaint

should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v.*

---

the named defendants.  Those allegations identify only a non-party, Chad Roffers, as the person who made allegedly false representations to the "owner of 2195 Cresta."  *See* AC, ¶¶220-237.

*Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987), *accord Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F.Supp.2d 282, 293 (S.D.N.Y.2000)) (citing *Ellison v. Am. Image Motor Co.*, 36 F.Supp.2d 628, 640 (S.D.N.Y.1999), *aff'd*, 2 Fed. Appx. 109 (2d Cir. 2001)) ("When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of *by each defendant*.") (emphasis added); *DiBlasio*, 2009 WL 2242605, at *13 (each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged).

A significant number of the allegations in the AC simply fail to meet this standard.  For example, many of the allegations are addressed to the "Defendants" or the "Enterprise Controllers"[4] generally, without describing what each defendant allegedly did.  *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).  "'[L]umping' all defendants together fails to satisfy the particularity requirement.'" *Leviton Mfg. Co., Inc. v. Reeve*, 11-Civ.-6238, 2013 WL 504020 (E.D.N.Y. Feb. 7, 2013), (amended Mar. 23, 2013) (quoting *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007)); *DiBlasio*, 2009 WL 2242605, at *13.

Moreover, as the examples quoted above demonstrate, many of the alleged misrepresentations identified in the AC are attributed only to "Concierge" (AC, ¶¶99-100, 148, 205, 268, 95-97, 100, 82, 155-156, 84-86), which is not named as a defendant in the section 1962(c) claim.  Other allegations refer to misrepresentations made by non-parties.   For example, all of the

---

[4]    *See* e.g. AC, ¶7 ("*Defendants* have conducted and continue to conduct illegal acts"); ¶8 ("*Defendants*' scheme to defraud current and potential clients, including Plaintiffs, and to unfairly compete, engage in false advertising, consumer fraud and related improper acts, encompass numerous predicate acts listed in 18 U.S.C.§ 1961."); ¶75 ("*Defendants* have used the proceeds of their RICO activity to make payments to Realogy to continue to receive referrals from Sotheby's thereby allowing *Defendants* to continue their fraudulent activity "); ¶129 ("As a result of *Defendants*' inducement, on December 2, 2010, the Bloesers entered into an Auction Marketing Agreement ("AMA") with Concierge"); ¶150 ("The Bloesers were directly injured as a result of *Defendants*' multiple acts of wire fraud."); ¶168 ("*Defendants* convinced the Jarols to enter into an Auction Marketing Agreement"); ¶206 ("As a result of *Defendants*' misrepresentations and mishandling of 68 Locust, the Jarols experienced substantial damages.").  *See also*, AC ¶¶211, 243, 247, 255, 263, 272, 291, 323 and 370.

representations made to the Jarols are attributed to non-parties, Chad Roffers and Mark Hughes, not to any of the named defendants. *See* AC, ¶¶158-161, 164-165, 174, 183, 185-186. Obviously, allegations regarding misrepresentations attributed to non-parties do not satisfy the requirements of pleading fraud with specificity as to the named defendants.

The few instances where the AC attempts to allege specific facts about particular defendants do not pass muster under Rule 9(b). The two allegations concerning George Graham are typical. In paragraph 142 of the AC, Plaintiffs alleges that "Graham falsely represented to another prospective Concierge client, the owner of a property located in Cornwall on Hudson, New York, that the auction was in fact successful." This allegation fails to identify the recipient of the representation, the date on which it was made, or that it was made using interstate wires. It also fails to establish that such "representation" was either false, material, or the proximate cause of any damage.[5] Similarly, paragraph 230 of the AC alleges, "Upon information and belief, one of the two bona fide registered bidders for the 2195 Cresta auction was a friend or acquaintance of Graham who was asked by Graham to submit his application and payment and make a 'stalking horse' bid."[6] This allegation also fails to identify the person to whom the representation was made, when it was made, or that it was made using interstate wires. This deficiency is further compounded by the fact that the allegations is made upon information and belief, which is insufficient under Rule 9(b). *Schneider v. Pearson Educ., Inc.*, No. 12 Civ. 6392, 2013 WL 1386968, at *4 (S.D.N.Y. April 5, 2013) (quoting *DiVittorio*, 822 F.2d at 1247–48) ("'Rule 9(b) pleadings cannot be based upon

---

[5]    The use of the word "successful" is more akin to nonactionable "puffery." *Loubier v. Allstate Ins. Co.*, 309 Civ. 261JBA, 2010 WL 1279082, at *5 (D. Conn. Mar. 30, 2010).

[6]    The very next paragraph alleges that the person who was allegedly asked to make a "stalking horse" bid "did not place an actual bid at auction." AC, ¶231. Thus, even if it is true that Graham made the request attributed to him, it is not a misrepresentation, was not material, is not a predicate act, and did not proximately cause any injury to anyone, including the Plaintiffs.

information and belief.'"). Further, there is no indication that this statement was false, that it was material, or that it caused any harm; Plaintiffs do not even allege that they were aware of it.

The allegations regarding alleged wire fraud committed by Russo are also deficient under Rule 9(b). Paragraphs 125 and 126 allege that Russo "repeatedly represented to the Bloesers that the home would sell for around $1.5 million" and that he, along with Chad Roffers, made "repeated representations to the Bloesers consisting of false statements as to Concierge's success rate and experience." Yet, the AC gives no dates of the "repeated representations," provides no details of what was allegedly represented or why it was false, and fails to allege that such representations were made using interstate wires.[7]

The allegations concerning Brady are also deficient. Paragraphs 266-270 allege that Brady misrepresented that the sale of 4118 Crystal was subject to bank approval in marketing materials distributed "through the mail, email, internet," without giving specifics as to when each took place, or to whom each was allegedly disseminated. Paragraph 31 alleges that Brady "was responsible for the deliberate misrepresentations made by Concierge to the public specified in this Amended Complaint," without indicating the specific representations for which Brady was allegedly

---

[7]    Paragraphs 136-137 of the AC allege that Russo "falsely represented that there were 4 registered bidders who had executed a Bidder Registration form and paid the 'Bidders Deposit.'" Again, the AC provides no dates, and fails to allege that such representations were made using interstate wires. Paragraphs 211 and 212 allege that Russo made representations concerning Concierge's experience and track record to the unidentified "seller of 2195 Cresta" "over the phone, through email, on Concierge's website, and in other marketing information which Concierge has caused to be available through the internet." These allegations fail to provide the content of the representations, what about them was false, the dates on which they were made, and the manner in which each was made (i.e. by phone, email or on Concierge's website). Paragraph 233 alleges that Concierge, "at the direction of Roffers and Russo, fabricated three registrations for bidders for the 2195 Cresta Auction," without giving specifics about what made the registrations false, what Russo did to "direct" them to be fabricated, and without stating that such registrations were transmitted using interstate wires. Paragraph 254 alleges that Russo told the unidentified "owner of Finncastle" that they would "remarket and 're-auction' the Finncastle property at no cost to the owner", without indicating that such representations were false, or that they were made using interstate wires. Paragraphs 266-270 allege that Russo misrepresented that the sale of 4118 Crystal was subject to bank approval in marketing materials distributed "through the mail, email, internet," without giving specifics as to when each took place, or to whom each was allegedly disseminated.

responsible, the content of those representations, the dates of those representations, or the recipient of those representations.[8]

### III.    The Allegations of Bank Fraud Fail To State A Claim

In addition to lacking the specificity required by Rule 9(b), the AC's allegations of bank fraud fail to state a claim upon which relief may be granted.[9]  Under 18 U.S.C. §1344, there can be no bank fraud unless a financial institution was the victim of the alleged fraud. *United States v. Nkansah*, 699 F.3d 743, 749 (2d Cir. 2012) (quoting *United States v. Barrett*, 178 F.3d 643, 647–48 (2d Cir. 1999) ("[C]onvictions for bank fraud are limited to situations where 'the defendant (1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss'")).  The AC not only fails to make those allegations, it fails to identify any financial institution, making it deficient under Rule 9(b) as well.  *See* AC, ¶¶203-205.

### IV.    All RICO Claims Against The Individual Defendants Should Be Dismissed

The RICO statute provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 . . ."  18 U.S.C. §1964(c).  Sections 1962(a)-(c) all make a distinction between the RICO "person" – the defendant who is alleged to have violated the substantive provisions of the statute – and the RICO "enterprise".  To state a RICO claim under these statutes, a RICO plaintiff must therefore "allege and prove the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name."  *Ben Hur*, 2008 WL 4702458, at *3 (quoting *Cedric Kushner Promotions Ltd. v.*

---

[8]    Paragraphs 69 and 70 of the AC allege that Brady stated in a video posted on Youtube that "Concierge's success allows Concierge to be recognized as 'Sotheby's Preferred Provider,'" without stating that the statement is false (the AC alleges only that it is "misleading").  Indeed, the AC acknowledges that Concierge is, in fact, Sotheby's Preferred Provider.

[9]    Bank fraud is defined in 18 U.S.C. §1344 as follows:  "Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud **a financial institution**; or (2) to obtain any of the moneys, funds,

*King*, 533 U.S. 158, 161 (2001)) (dismissing section 1962(c) claim where complaint failed to distinguish between the RICO defendant and the RICO enterprise); *Carvel v. Franchise Stores Realty Corp.*, 08 Civ. 8938, 2009 WL 4333652 (S.D.N.Y. Dec. 1, 2009) (Koeltl, J.) (holding that the distinctiveness requirement applies to claims under section 1962(a) and (b), as well as section 1962(c)).

Here, the AC clearly alleges that Concierge is the enterprise (AC, ¶12), but it fails to make the crucial distinction between the RICO persons and that enterprise. This is fatal to all of Plaintiffs' RICO claims. In *Cruz v. FXDirectDealer, LLC*, No. 12-1252-cv, 2013 WL 3021904 (2d Cir. June 19, 2013), the Second Circuit dismissed a RICO complaint against the Individual Defendants, who were either officers of employees of the RICO enterprise, because the Complaint failed to allege that they were distinct from the RICO "enterprise:"

> **We have long since rejected the idea that a RICO enterprise may consist "merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant,"** *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, **30 F.3d 339, 344 (2d Cir.1994), and we see no reason to revisit that issue here.** The requirement of distinctness cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees.

2013 WL 3021904 at *4 (emphasis added).

Here, as in *Cruz*, the AC alleges that the Individual Defendants are either officers or employees by Concierge, or both. *See* AC, ¶29 (Brady), ¶34 (Graham), ¶35 (Russo). Because Concierge is the alleged "enterprise," and because the AC makes clear that all of the actions of the Individual Defendants were allegedly taken on behalf of Concierge, the AC fails to allege that the Individual Defendants are distinct from the enterprise. The RICO claims asserted by all plaintiffs must therefore be dismissed as to individual Defendants Brady, Graham and Russo.

---

credits, assets, securities, or other property owned by, or under the custody or control of, **a financial institution**, by means of false or fraudulent pretenses, representations, or promises;" (emphasis added).

## V.   The §1962(a) and §1962(b) Claims Should Be Dismissed

The first claim for relief in the AC purports to allege a violation of 18 U.S.C. § 1962(a)[10] against all Defendants.  "[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income."  *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990).  Thus, "to state a civil claim under § 1964(c) for a violation of § 1962(a), a plaintiff must allege injury 'by reason of' defendants' investment of racketeering income in an enterprise."  *Ouaknine*, 897 F.2d at 82-83.  "In other words, a plaintiff must allege an injury resulting from the defendant's investment of racketeering income in an enterprise (i.e., an 'investment injury'), separate and apart from any injury caused by the predicate acts themselves." *OSRecovery, Inc. v. One Groupe Int'l., Inc.*, 354 F.Supp.2d 357, 371 (S.D.N.Y.2005) (citing *Ouaknine*, 897 F.2d at 83, and *Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236, 245-46 (S.D.N.Y. 2003)).  Allegations that a RICO enterprise simply reinvested racketeering proceedings back into its own activities, on their own, are insufficient to maintain a claim under § 1962(a); in that situation, "the plaintiff's injuries derive proximately not from the investment but rather from the predicate acts themselves." *Allstate Ins. Co. v. Seigel*, 312 F.Supp.2d 260, 271 (D.Conn. 2004); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439, 444 (E.D.N.Y. 2007) ("[A] plaintiff . . . must plausibly allege that the predicate acts themselves are the proximate cause of its injury"); *Globe*, 2007 WL 2826630, at *5 (dismissing plaintiff's section 1962(a) claims because "the complaint does not allege any facts to support an inference that the plaintiff suffered an investment injury distinct from any injury suffered as a result of the predicate acts").

---

[10]   18 U.S.C. §1962(a) provides:  "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity * * * to invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

Here, the allegations in the AC fail to plausibly allege any injury that stems directly from the investment of funds derived from alleged racketeering, rather than from the alleged predicate acts themselves.  The only allegation that even comes close is contained in paragraph 377 of the AC ("Defendants' use of income derived from a pattern or racketeering activity to acquire an interest in . . . the enterprise has damaged . . . the Plaintiffs").  However, that allegation is purely conclusory and is contradicted by the very next conclusory allegation, which alleges that "Plaintiffs have been damaged as a result of the various acts of wire fraud and mail fraud committed by Defendants".  The other allegations in the AC, which are set forth in paragraphs 379 through 386, amount to nothing more than allegations that the "enterprise" – Concierge – reinvested the proceeds of its alleged racketeering activity back into itself.  *Atl. Intern. Movers, LLC v. Ocean World Lines, Inc.*, 12 Civ.2464, 2012 WL 6200449, at *6 (E.D.N.Y. Dec. 11, 2012) (the injury causation requirement of §1962(a) is not satisfied by allegations that a defendant, which is also the enterprise, invested the racketeering income in itself).  Accordingly, the § 1962(a) claim should be dismissed as against all Defendants.

The second claim for relief, under 18 U.S.C. §1962(b), also fails to allege proximate cause.[11] "Section 1962(b) makes it unlawful to acquire or maintain, through a pattern of racketeering activity, an interest in or control over an enterprise."  *OSRecovery*, 354 F. Supp. 2d at 372.  It prohibits the takeover of legitimate businesses through racketeering activity.  *Lugosch v. Congel*, 443 F.Supp.2d 254 (N.D.N.Y. 2006).  "[T]o state a claim under Section 1962(b), a plaintiff must allege that he suffered an injury resulting from the defendant's acquisition or maintenance of its interest (i.e., an 'acquisition or maintenance injury'), as distinct from an injury caused by the predicate acts alone."  *OSRecovery,* 354 F. Supp. 2d at 357, citing *Discon, Inc. v. NYNEX Corp.*, 93

---

[11]  Section 1962(b) provides: "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

F.3d 1055, 1062-63 (2d Cir.1996), vacated on other grounds, 525 U.S. 128 (1998); *Gristede's Foods*, 532 F. Supp. 2d at 446 (quoting *OSRecovery*, 354 F. Supp. 2d at 357)); *see also Fischbein v. Sayers*, No. 04 Civ. 6589 (LTS), 2009 WL 2170349, at *5 (S.D.N.Y. July 16, 2009) (dismissing plaintiff's §1962(b) claim where complaint "merely allege[d] injuries indistinct from those arising from the commission of the alleged predicate acts").

The AC here does not plausibly allege that the Plaintiffs' injuries, if any, were caused by defendants' acquisition and control over Concierge, as opposed to by the racketeering acts themselves.  The only allegation that remotely comes close is paragraph 395, which is entirely conclusory.  Accordingly, because the AC does not plausibly allege an acquisition or maintenance injury, the section 1962(b) claims of all Plaintiffs should be dismissed as against all Defendants.

**VI.    GE's §1962(c) Claim Should Be Dismissed Because Its Alleged
         Injuries Were Not Proximately Caused By The Alleged RICO Violations**

GE's claims are those of a disgruntled competitor.  With the exception of its common law tortious interference with contract claim, which also fail to state a claim for the reasons discussed in Point IX.A., *infra*, GE does not contend that it was injured directly by any acts that Concierge allegedly committed.  This is fatal to its section 1962(c) claim, because GE cannot show that its alleged injuries were proximately caused by a RICO violation.

A plaintiff has standing to assert a RICO claim if it was injured in its business or property "by reason of a violation of" the RICO statute.  *Lawson v. Full Tilt Poker Ltd.*, 11 civ 6087 (KMW), 2013 WL 950871 (S.D.N.Y. Mar. 7, 2013) (citing 18 U.S.C. §1964(c)).  An injury occurs "by reason of" a RICO violation when the illegal acts are a proximate cause of a plaintiff's injury.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Proximate cause, in turn, requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) (quoting *Holmes*, 503 U.S. at 268–69); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). The Supreme Court has explained that a

proximate relationship between the RICO violation and the injury is required because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff s damages attributable to the violation, as distinct from other, independent, factors." *Holmes*, 503 U.S. at 269. Thus, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461.

A RICO plaintiff cannot circumvent the proximate cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense. *Holmes*, 547 U.S. at 460 (citing *Associated Gen. Contractors*, 459 U.S. 519, at 537 (1983)). GE's claim of proximate cause fails because any injuries that it claims to have sustained were not proximately caused by the alleged RICO violations. In this regard, GE's RICO claims fail for the same reasons that the Supreme Court found that the claims of the plaintiff in *Anza* were insufficient.

In *Anza*, the plaintiff brought a RICO action against a competitor seeking recovery for injury to its business caused by the competitor's alleged practice of selling products free of sales tax and submitting fraudulent sales tax returns to a third party (the State) - in violation of the mail fraud or wire fraud statutes. As a result of these acts, the competitor was able to offer lower prices, which attracted more business, causing plaintiff to lose business. The Supreme Court found that the direct victim of the defendants' fraud was the State, and that plaintiff's injuries were not proximately caused by the alleged fraud. *Id.*, 547 U.S. at 460. In language particularly pertinent here, the Supreme Court noted:

> [plaintiff's] lost sales could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [plaintiff's] lost sales were the product of [the defendant's] decreased prices.

*Id.,* 547 U.S. at 468; *see also Makowski v. United Broth. of Carpenters & Joiners of Am.*, No. 08 Civ. 6150, 2010 WL 3026510, at *8 (S.D.N.Y. Aug. 2, 2010) ("When factors other than the

defendant's RICO violation 'are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.'")

Here, as in *Anza*, GE was not the direct victim of the alleged fraud.  The alleged misrepresentations were purportedly made to third parties – Concierge's clients and prospective clients.  If anyone was a direct victim of the alleged fraud, it could only be those clients who were allegedly induced to retain Concierge based on false misrepresentations.  Additionally, GE does not even claim that it was misled in any way by anything that Concierge allegedly did.  GE claims only to be an indirect victim, at best, whose inability to attract clients "could have resulted from factors other than [Concierge's] alleged acts of fraud."  *Id.*, 547 U.S. at 459.  There are a multitude of other reasons why those property owners chose to hire Concierge, and chose not to use GE or any other competitor, other than the alleged misrepresentations that are alleged in the Complaint.[12]  *See Globe Wholesale Tobacco Distributors Inc. v. Worldwide Wholesale Trading Inc.*, 06 Civ. 2865 (LAK), 2007 WL 2826630, at *4-5 (S.D.N.Y. Sept. 28, 2007) (allegation that plaintiff lost business due competitor's practice of charging unlawfully low prices was insufficient to show proximate cause where, *inter alia*, there were a number of competitors competing in the market).  Indeed, there is no plausible allegation in the AC that GE would have secured business from any property owner <u>but for</u> the purported wire fraud.  *See* Point IX.B., *infra*.

The majority of the transactions discussed in the AC, including those involving the Jarols' property (AC, ¶¶151-209), the property located at 2195 Cresta Rd. (AC, ¶¶210-243), the property known as Finncastle (AC, ¶¶244-260), the property located in Carbondale Colorado (AC, ¶¶261-

---

[12]   The AC identifies two such reasons – referrals from real estate brokers and Concierge's close business relationship with Sotheby's International Realty ("Sotheby's") (AC, ¶¶83, 117, 120, 152-154) – that have nothing to do with any alleged fraud.  *See* AC, ¶¶117, 152-154 (broker referrals), 65-66 (relationship with Sotheby's).  Notably, there is no allegation that Concierge's preferred provider relationship with Sotheby's is either illegal, improper, or a RICO predicate act.  Moreover, the failure to disclose the details of Concierge's relationship to its customers, like the Bloesers (AC, ¶118) or the Jarols (AC, ¶163), does not establish a RICO violation because Concierge had no duty to disclose.  *Katzman*, 167 F.R.D. at 656 .

272), the property located in Far Hills, NJ (AC, ¶¶273-279), and the ten properties described in

paragraph 280 of the AC, contain no allegation that the property owner was even aware of GE at the

time it decided to enter into an auction agreement with Concierge.  For GE to claim that it was

proximately harmed by alleged misrepresentations made to these property owners simply defies

credulity.  Indeed, in these cases, GE cannot even establish "but for" causation, much less

proximate causation.

Here, there are a host of "independent factors" that could account for any alleged injury.[13]

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008).  As a result, GE cannot establish

that its injuries were proximately caused by any RICO violation, and its § 1962(c) claim should be

dismissed.

**VII.    The Bloesers' and Jarols' RICO  Claims Should Be Dismissed**

The §1962(c) claim asserted by the Bloesers and Jarols should be dismissed for other

reasons as well.  Both claims are nothing more than "garden-variety business dispute[s]"[14] cast as

wire fraud, and in the case of the Jarols, bank fraud.  *See McDonald v. Schencker*, 18 F.3d 491, 499

(7th Cir. 1994) (finding appellant's mail fraud claim was invalid where it involved "nothing more

than a garden-variety business dispute recast as mail fraud").  Although the AC purports to allege

---

[13]    Among them might be the fact that Grand Estates has been accused of improper business practices, including many of the same improper practices that it accuses Concierge of in the AC.  *See, e.g. Oremus v. 4K&D Corporation*, Case No. 2010 CP 0203055, Court of Common Pleas, Aiken County, Second Judicial Circuit, SC. Copy annexed to the Wolf Dec. as Exh. B.  The Court may take judicial notice of this pleading, which is a public record.  FRE § 201.

[14]    The dispute with the Bloesers is the subject of litigation in New York state court, in which Concierge is suing to recover $119,500.  AC, ¶141.  The dispute with the Jarols involves their claim that Concierge did not have the right to collect a $100,000 Break Up Fee (AC, ¶204) – a claim that is belied by the terms of the contract that they signed.  *See* Wolf Dec., Ex. C.  The Court may take judicial notice of the Jarols' contract because it is referred to in the AC.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[W]here public records that are integral to a fraud complaint are not attached to it, the court . . . is permitted to take judicial notice of those records").

predicate acts of wire fraud, only a few of those allegations pertain in any way to the Bloesers or the Jarols, and none of those allegations contain the specificity required by Rule 9(b).[15]

The Bloesers' and Jarols' §1962(c) claim also fails to establish that either of them were injured by reason of a pattern of racketeering activity.  A "pattern of racketeering activity" requires at least two predicate acts. 18 U.S.C. § 1961(5).  It also requires "either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time)." *GICC Capital Corp. v. Tech. Fin. Group*, 67 F.3d 463, 466 (2d Cir.1995) (internal quotation marks omitted); *see also Zimmerman v. Poly Prep Country Day School*, 888 F. Supp. 2d 317, 329 (E.D.N.Y. 2012) (quoting *GICC Capital Corp.*, 67 F.3d at 466).

The claims asserted by the Bloesers and the Jarols each involve only one isolated transaction.  Neither the Bloesers nor the Jarols claim to even be aware of any of the other misrepresentations mentioned in the AC and neither of them claims to have been injured by any of the other wrongful acts alleged in the AC.  Accordingly, as to the Bloesers and the Jarols, the AC does not meet even the minimum requirement of alleging at least two acts of racketeering activity. 18 U.S.C. §1961(5).

The RICO claims of the Bloesers and Jarols should also be dismissed in their entirety as against the Individual Defendants because the AC does not allege that any of the Individual Defendants did anything to induce them to select Concierge, and none of the alleged predicate acts is claimed to have had any impact on them.  Nor do they allege that any of the Individual Defendants made any misrepresentation that they saw or relied on.  Accordingly, the Bloesers' and Jarols' RICO claims against the Individual Defendants should be dismissed.

---

[15]   The allegations of fraudulent misrepresentations made to the Bloesers and the Jarols do not contain the specificity required by Rule 9(b).  *See* AC, ¶¶ 126, 136-137, 154, 155.  *Ben Hur*, 2008 WL 4702458, at *2.  The allegations of bank fraud are also deficient, for the reasons discussed in Point III, *supra*.

### VIII.   The Section 1962(d) Claim Should Be Dismissed

Section 1962(d) of the RICO Act makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." 18 U.S.C. § 1962(d).  In *Valenti v. Penn Mutual Life Ins. Co.*, 850 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2012) (Koeltl, J.), this Court adhered to the principle that to establish a RICO conspiracy claim pursuant to § 1962(d) a plaintiff must establish "'as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator knowingly participated in the same.' . . . [T]he plaintiff must establish that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity."  *Valenti*, 850 F.Supp.2d at 451 (quoting *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir.2003)); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25-26 and fn. 4 (2d Cir.1990) (plaintiff must plausibly allege facts that demonstrate a conscious "agreement ... to commit at least two predicate acts"); *accord U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 291 (S.D.N.Y. Sep 25, 2012).  "Broad allegations of conspiracy are insufficient; the plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'"  *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)) (internal quotation marks omitted).

Here, the AC alleges conspiracy in only the most conclusory fashion.  Paragraph 418 of the AC alleges only that "[e]ach of Defendants agreed with at least one of the other Defendants to commit acts and/or omissions in furtherance of a common conspiracy to violate 18 U.S.C. §1962."  No facts are alleged that remotely suggest that all defendants consciously agreed amongst themselves to commit at least two predicate acts.  The AC's lone conclusory allegation of conspiracy is plainly insufficient to state a claim under section 1962(d) against any of the Defendants.

Finally, apart from the above pleading deficiencies, the section 1962(d) claim should be dismissed because the other substantive RICO claims are inadequately pleaded, for the reasons discussed above.  There can be no RICO conspiracy without a substantive RICO violation.  *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).

## IX.    The Tortious Interference Claim Should Be Dismissed

The Sixth Claim for Relief is labelled "tortious interference" and appears to conflate claims for tortious interference with an existing contract and tortious interference with prospective business relations.  Because New York treats these claims as two distinct torts (*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 425-26 (2007)), we address them separately here, although the AC does not.[16]

### A.    The Tortious Interference With Contract Claim Should Be Dismissed

The elements of tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional and improper procurement of the third-party's breach of the contract, (4) actual breach of the contract; and (5) damages.  *White Plains Coat*, 8 N.Y.3d at 426; *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006)).  The AC does not allege two of these elements.

The AC indentifies only one actual contract with which Concierge allegedly interfered – a contract between GE and Charlie Schoenherr.  AC, ¶345.  The AC does not plausibly allege that Concierge (or any of the other defendants[17]) was aware of the purported contract between GE and Schoenherr (AC, ¶¶ 345-352).  The AC contains only one conclusory allegation (AC, ¶430), which

---

[16]    Although the Sixth Claim For Relief is asserted on behalf of all plaintiffs, none of the allegations pertain to the claims made by the Bloesers or the Jarols.  The allegations are limited to Grand Estates.

[17]    Because the AC does not allege that any defendant other than Concierge did anything to interfere with the Schoenherr contract, the tortious interference claim should be dismissed as to them.

is entitled to no weight because the AC fails to allege how Concierge was actually aware of the contract.

The AC also fails to allege that Mr. Schoenherr breached a contract with GE. *Murataj v. Dream Dragon Prods., Inc.*, 72 A.D.3d 527, 527 (1st Dept 2010) (affirming dismissal of tortious interference with contract claim where record demonstrated there was no breach of contract); *Marks v. Smith*, 65 A.D.3d 911, 916 (1st Dept 2009) (finding plaintiff could not prevail on tortious interference with contract claim where record established no breach occurred). Rather, the AC craftily alleges that he "cancelled his contract" by informing GE "that he did not want to go ahead with his auction" and that "Grand Estates promptly refunded [Mr. Schoenherr's] money." AC, ¶¶ 347-348. The allegation that Mr. Schoenherr's "cancelled" his contract, and that GE promptly refunded his money, suggests that Mr. Schoenherr did not *breach* the contract. *See* 22A N.Y. Jur. 2d Contracts § 503. In any event, because the AC does not allege that Concierge induced Mr. Schoenherr to breach a contract with GE, it simply fails to state a valid claim. *Plasticware*, 852 F. Supp. 2d at 404.

Finally, the AC fails to allege that either Concierge or any of the other defendants did or said anything wrong or improper to induce Mr. Schoenherr to breach his contract. The only allegation is that Concierge "contacted Mr. Schoenherr and caused him to cancel his contract with GE and instead contract with Concierge." This is plainly insufficient. *White Plains Coat*, 8 N.Y.3d at 427 (emphasis omitted) ("[P]rotecting existing contractual relationships does not negate a competitor's right to solicit business, where liability is limited to improper inducement of a third party to breach its contract"). For all of these reasons, the Sixth claim should be dismissed.

### B.    The Tortious Interference With Business Relations Claim Should Be Dismissed

GE alleges that, "[o]n multiple occasions, Grand Estates was unsuccessful in contracting with a seller due to Concierge's illegal activities." AC, ¶ 334. The AC then identifies four people

with whom Defendants allegedly interfered (Carolyn Edgcomb, Jim Mattei, and Pamela and Randall Johnson).  AC, ¶¶335-344, 353-365.  However, the AC does not allege that GE contracted with any of those people; only that it was merely pitching its services to them.  *See* AC, ¶334.[18]

Under New York law, "[g]reater protection is accorded an interest in an existing contract . . . than to the <u>less substantive, more speculative interest in a prospective relationship</u>," and accordingly the defendant's conduct must be more culpable for a claim of tortious interference with a prospective contract.  *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 520 (S.D.N.Y. 2011) (emphasis added) (quoting *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980)).  A tortious interference with business relations claim requires that a plaintiff allege that: "'(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'"  *Plasticware,* 852 F. Supp. 2d at  402 (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).  Improper means include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Guard–Life*, 50 N.Y.2d at 191.  In addition, "[t]he defendant must target some activities toward the third party and convince the third party not to enter into a business relationship with the plaintiff."  *Refco*, 826 F. Supp. 2d at 520-21, citing *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997).

GE does not allege: (i) that Defendants were aware of its alleged prospective business relationships; (ii) that GE had a legitimate expectation of securing contracts with any of prospects; (iii) that Defendants engaged in wrongful conduct directed toward GE that directly caused its prospects not to contract with GE; or (iv) that Defendants' conduct was the "but for" cause that GE

---

[18]  Plaintiffs also summarily identify three other individuals with whom "Grand Estates was trying to contract with to auction their property, but who instead contracted with Concierge…"  AC, ¶366.

did not contract with the third-parties.  There can be no tortious interference claim unless there is "a reasonable probability of a business relationship," which GE does not plausibly plead.  *BDCM Fund Adviser, LLC v. Zenni*, 103 A.D.3d 475, 478 (1st Dep't 2013).  At most, GE alleges that it was pitching those individuals, and that they ultimately selected Concierge.  Sales pitches alone do not create a legitimate expectation, and Plaintiff does not allege any prior business relationship.  *See generally, NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 625 (1996); *Ahead Realty LLC v. India House, Inc.*, 92 A.D.3d 424 (1st Dept 2012).  There are a variety of reasons why a seller would chose one competitor over another.

Nor is there a plausible allegation of malice or other improper conduct by Concierge directed towards GE.  *Refco*, 826 F.Supp.2d at 522.  *All* of the claimed misconduct concerns alleged misrepresentations *about Concierge*, not about GE.  There are no allegations that any defendant made any comments about GE to the property sellers who chose Concierge over GE.  Without any allegation that wrongful means were directed against GE, the tortious interference with prospective business relationships claim also must fail.  *See generally, Lawrence v. Union of Orthodox Jewish Congregations of Am.*, 32 A.D.3d 304, 820 N.Y.S.2d 60, 61 (1st Dept 2006).

## X.    The AC Fails To State A Claim Under GBL §349 Or §350

In order to state a valid claim under GBL §349, a Plaintiff must allege "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009).  In addition, under both GBL §§349 and 350, "the alleged deception must have occurred in New York."  *Leider v. Ralfe*, 387 F.Supp.2d 283, 292 (S.D.N.Y. 2005) (citing *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324-25 (2002)) ("to qualify as a prohibited act under the statute, the deception of a consumer must occur in New

York.").[19]  As the Court of Appeals held in *Goshen*, the GBL "was not intended to police the out-of-state transactions of New York companies."  98 N.Y.2d at 325.

GBL §350 prohibits false advertising in the conduct of any business in New York.  To state a valid claim for false advertising, a plaintiff must allege that "the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury."  *Andre Strishak & Assoc. v. Hewlett Packard Co.*, 300 A.D.2d 608, 609 (2nd Dep't 2002).  A GBL §350 claim also requires the plaintiff to identify a particular advertisement and to allege that it relied on that advertisement.  *Id.* at 610; *see also Leider*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005); *Pelman ex rel. Pelman v. McDonald's Corp.*, No. 02 Civ. 7821, 2003 WL 22052778, at *8 (S.D.N.Y. Sept. 3, 2003) ("The plaintiffs' vague allegations of reliance on a 'long-term deceptive campaign' are insufficient to fulfill the reliance requirement of §350 for otherwise unspecified advertisements."), *vacated in part on other grounds*, 396 F.3d 508 (2d Cir. 2005).

Here, it is clear that the Bloesers are the only plaintiffs who arguably could claim that they were deceived in New York.  Defendants' alleged misrepresentations to the Jarols all took place in Illinois, which is where they were allegedly deceived.  AC, ¶¶151-209.  GE does not allege that it was deceived at all, much less that it was deceived in New York.  Accordingly, the claims of the Jarols and GE under sections 349 and 350 of the GBL fail to state a claim upon which relief may be granted.  *Goshen*, 98 N.Y.2d at 325;[20] *see also Kaufman v. Sirius XM Radio, Inc.*, 474 Fed. Appx. 5

---

[19]  In *Goshen*, the Court of Appeals dismissed a GBL § 349 claim based on allegations that the "deceptive scheme [was] contrived and implemented" in New York, by defendants who had "extensive ties to New York and conducted business in the state." *Id.* at 321-22.  In dismissing the GBL claims, the Court of Appeals held that an "allegedly deceptive scheme that originates in New York, but injures a consumer in a transaction outside the state" is not actionable under GBL § 349, and that "'hatching a scheme' or originating a marketing campaign in New York [does not] in and of itself constitute an actionable deceptive act or practice under the statute. . ." *Id.* at 321, 324.  Applying those principles, the Court held that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Id.* at 325.  Because the plaintiff in *Goshen* "received [the allegedly deceptive] information" and "purchased his policy and paid his premiums in Florida," there was no violation of GBL §349. *Id.* at 326.

[20] *Goshen* concerned GBL §349, but also has been extended to GBL §350.  *Medisim Ltd. v. BestMed LLC*, 2012 WL 5954757, *6 (S.D.N.Y. Nov. 28, 2012).

(2d Cir. 2012) (finding *Goshen* forecloses relief under GBL §349 in the absence of an intrastate transaction that caused plaintiff harm); *People ex rel. Spitzer v. Direct Revenue, LLC*, 19 Misc.3d 1124(A), 862 N.Y.S.2d 816, 2008 WL 1849855, *7 (Sup.Ct. N.Y. Co. Mar 12, 2008) ("where the deception is alleged to have affected consumers nationwide, it is not enough to allege merely that the defendant's principal place of business is in New York... or that defendant originated the overall scheme in the state.").[21]

Even if GE could state a claim under the GBL, its claims should be dismissed because the AC establishes that GE's injuries, if any, were not directly caused by the allegedly deceptive conduct. *Smokes-Spirits*, 12 N.Y.3d 616, 622 (2009). Although GE alleges that its claimed injuries – inability to secure auction business from potential clients – were in some sense "caused" by defendants' alleged deception of real estate owners, the New York Court of Appeals has required more than an allegation of "but for" causation to state a claim for relief under GBL §349. *Id.* (finding that the City failed to state a claim where its alleged injuries were indirect and derivative of injuries allegedly sustained by consumers). Here, GE's claimed injuries – loss of potential auction business – are indirect and derivative of the harm allegedly sustained by the real estate owners who were allegedly deceived by Defendants' conduct. *Laborers Local 17 Health & Benefit Fund v.*

---

[21]  In *Cruz v. FXDirectDealer, LLC*, 2013 WL 3021904, at *5, the Second Circuit recognized "that a split of authority has developed subsequent to *Goshen* about the appropriate territorial test to employ under sections 349 and 350: a 'transaction-based' test on the one hand, or, on the other hand, a test premised on where the victim is deceived, regardless of where the transaction occurs." The *Cruz* court held that: "Mindful of that split, and mindful too that the two tests are not mutually exclusive, we think the appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties." *Id.* (emphasis added). *Cruz* is distinguishable because there is no similar nexus with New York for GE and the Jarols' claims. The nexus with New York in *Cruz* was a series of transactions that occurred in New York, payments to defendant were in New York, processing of disbursements was from defendant's New York office, and defendant required all communications be sent to its New York office. *Cruz*, 2013 WL 3021904, at *6. That simply is not the case here. GE does not allege that it had any transactions with Concierge in New York or anywhere. The transaction with the Jarols concerned their Illinois property, and the acts alleged occurred while defendants were in Illinois. Here, the AC does not even allege that Concierge has any connection to New York. To the contrary, Plaintiffs allege that Concierge's connections to New York are a sham and that their headquarters in the Chrysler Building are a "virtual office." AC, ¶¶ 122-124, 329-332, 360. Accordingly, even if the Court applies a "transaction" test, as the Second Circuit did in *Cruz,* the AC still fails to state a claim under GBL §§349-350 on behalf of the Jarols or GE.

*Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir.1999) ("Being purely contingent on harm to third parties, these injuries are indirect"); *Spin Master Ltd. v. Bureau Veritas Consumer Products Servs., Inc.*, 08 Civ. 923, 2011 WL 1549456 (W.D.N.Y. Mar. 7, 2011) (report and recommendation adopted, 08 Civ. 923A, 2011 WL 1542038 (W.D.N.Y. Apr. 22, 2011)) (citing *Smokes-Spirits*) ("To the extent that plaintiff has alleged harm to consumers of the Aqua Dots, its claim for damages as a result of those injuries is indirect and derivative. It is well-settled that derivative actions are barred under section 349"). Because GE's alleged injuries are indirect and derivative, its claims under GBL §§349 and 350 should be dismissed.

Finally, the GBL §350 claim should be dismissed because GE does not identify any advertisement on which it relied to its detriment. *Leider*, 387 F.Supp.2d 283, 292. To the contrary, the AC makes clear that GE was not deceived in any way by anything that Concierge has done.

**XI.    The Action Should Be Dismissed Entirely Against CA, Segue And BHI
For Lack Of Jurisdiction, Or Alternatively, For Failure To State A Claim**

This action should be dismissed entirely against CA, Segue and BHI because the Court lacks personal jurisdiction over those defendants. Fed. R. Civ. P. 12(b)(2). CA, Segue and BHI were not named in the original complaint [Doc. 1]. At the pre-motion conference, Plaintiffs did not state that they intended to amend the complaint to add CA, Segue and/or BHI [Doc. 7]. The clerk never issued a summons to CA, Segue and/or BHI, and a review of the docket shows that Plaintiffs' proof of service upon CA, Segue or BHI has not been filed, as required by Fed. R. Civ. P. 4(l).

Even assuming, *arguendo*, proper service of the AC upon Segue, CA and/or BHI, Plaintiffs did not obtain or serve a summons upon those newly named defendants. Fed. R. Civ. P. 4(c)(1). A summons "must be issued for each defendant to be served" (Fed. R. Civ. P. 4(b)), including defendants added in an amended complaint. *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 288 (D. Conn. 2008); *Sassi v. Breier*, 76 F.R.D. 487, 490 (D. Wis. 1977), *aff'd* 584 F.2d 234 (7th Cir. 1978). CA, Segue and BHI were not served with a summons, and there is no indication on PACER that

Plaintiffs obtained a summons directed to CA, Segue or BHI signed by the clerk and bearing the Court's seal.  Fed. R. Civ. P. 4(a).  Plaintiffs did not request that CA, Segue and/or BHI waive service of the summons.  Fed. R. Civ. P. 4(d).  Accordingly, the claims should be dismissed against CA, Segue and BHI pursuant to Fed. R. Civ. P. 12(b)(2), (4) and (5).  *Harper v. City of New York*, 2010 WL 4788016, *8 (E.D.N.Y. Nov. 17, 2010) *aff'd*, 424 Fed. Appx. 36 (2d Cir. 2011).

Assuming *arguendo* that there is jurisdiction over CA, Segue and BHI, the AC should nevertheless be dismissed as to them because it fails to state a claim as to any of them.[22]  The AC fails to specify what any of them is alleged to have done to violate RICO (Counts 1-4) or GBL §§349 and 350 (Claims 5 and 7), and it does not allege that any of them tortiously interfered with any contract or other business relationship (Claim 6).  As to these defendants, the AC is entirely frivolous.  Accordingly, if the Court finds that it has jurisdiction against these defendants, the AC should be denied in its entirety on the merits.

Further, in order to state a claim under 18 U.S.C. §1962(c), the complaint must allege specific facts showing that the defendants "'share[d] a common purpose to engage in a particular fraudulent course of conduct'" and to work together to achieve such purposes. *Cruz*, 2013 WL 3021904, at *4 (quoting *First Capital Mgmt.*, 385 F.3d at 174).  Here, the AC is totally devoid of any allegations concerning the intent of CA, Segue and BHI.  Although paragraph 2 of the AC contains the conclusory allegation that each these defendants "engaged in a series of fraudulent acts and deceitful conduct that has caused substantial damage to the Plaintiffs," it provides absolutely no details whatsoever as to how these defendants engaged in those acts or that they shared a common purpose.[23]  Because the AC contains no plausible factual allegation that these defendants shared a

---

[22]    See AC, ¶¶ 15, 41-46 and 380 (allegations relating to Segue, CA or BHI), ¶ 37 (Segue), ¶¶22-26 (CA), ¶32 (BHI).

[23]    The rest of the allegations do not even purport to address the intent of these Defendants.  *See* AC, ¶¶15, 41-46, 380 (all three defendants), 37 (Segue), 22-26 (CA), ¶32 (BHI).

common purpose to engage in a particular fraudulent course of conduct and that they worked together to achieve such purposes, the §1962(c) claim in the AC should be dismissed as against them. *Id.*

**<u>CONCLUSION</u>**

For the foregoing reasons, the AC should be dismissed in its entirety. Moreover, because the Court has already provided plaintiffs with an opportunity to replead following the pre-motion conference, at which substantially all of the foregoing issues were addressed, the AC should now be dismissed with prejudice. The defects with Plaintiff's allegations are substantive and cannot be cured. Re-pleading would thus be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Dated: New York, New York
      July 8, 2013

                    MOSES & SINGER LLP
                    *Attorneys for Defendants*

                    By:    /s/
                        Robert Wolf, Esq.
                        Robert Lillienstein, Esq.
                        Jordan Greenberger, Esq.
                    405 Lexington Avenue
                    New York, New York 10174
                    Tel: (212) 554-7800
                    Fax: (212) 554-7700
                    rwolf@mosessinger.com
                    rlillienstein@mosessinger.com
                    jgreenberger@mosessinger.com